## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| SARAH WHITTEN, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 4:17-CV-0866-VEH** |
| | ) |
| NANCY A. BERRYHILL, *Acting* | ) |
| *Commissioner, Social Security* | ) |
| *Administration*, | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Sarah Whitten ("Ms. Whitten") brings this action under 42 U.S.C. § 405(g). Ms. Whitten seeks a review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for supplemental security income ("SSI"). Ms. Whitten exhausted the administrative remedies available before the Commissioner. This case is now ripe for judicial review under section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).

The Court carefully reviewed the record and **AFFIRMS** the ALJ's decision.

### II. RELEVANT BACKGROUND

The amended alleged onset date is December 12, 2013. (Tr. 51). Ms. Whitten

suffers from numerous severe impairments, but the ALJ found that none rendered her disabled. (*Id.* at 53-54, 67). Ms. Whitten filed an application for Social Security benefits on December 12, 2013. (*Id.* at 51). The Social Security Administration denied that application on March 16, 2014. (*Id.*). Administrative Law Judge Bruce W. MacKenzie held a hearing on September 24, 2015. (*Id.* at 51, 67). The ALJ issued his decision on December 28, 2015, which was unfavorable to Ms. Whitten. (*Id.* at 67). In that opinion, the ALJ found that Ms. Whitten did not meet the disability standard at Steps Three and Five. (*Id.* at 54, 66). Ms. Whitten requested the Appeals Council review the claim. (*Id.* at 2-5). The Appeals Council refused. (*Id.*).

## III.  STANDARDS

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## IV.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[1]  The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;

(2)    whether the claimant has a severe impairment;

(3)    whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)    whether the claimant can perform his or her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will

automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## V.   FINDING OF THE ADMINISTRATIVE LAW JUDGE

After considering the record, the ALJ made the following findings:

1.   The claimant has not engaged in substantial gainful activity since December 12, 2013, the application date (20 CFR 416.971 *et seq.*).

2.   The claimant has the following severe impairments: obesity; status post lumbar laminectomy L4/5; degenerative disc disease of the lumbar spine at L1/2; degenerative joint disease of the right knee; degenerative joint disease of the left shoulder; and major depressive disorder (20 CFR 416.920(c)).

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity, generally, to perform light work as defined in 20 CFR 416.967(b). The undersigned further finds, however, that the full range of light work that could be performed by the claimant is reduced by the following exertional and non-exertional, functional limitations: the claimant would require a sit/stand option with the

retained ability to stay on or at a work station in no less than 30 minute increments each without significant reduction of remaining on task and she is able to ambulate short distances up to 100 yards per instance on flat hard surfaces. She is able to frequently use foot controls bilaterally. She can frequently reach overhead bilaterally. She can occasionally climb ramps and stairs but never climb ladders or scaffolds. She can frequently balance but can only occasionally stoop and never crouch, kneel, or crawl. The claimant should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes or operate commercial motor vehicles. She can tolerate frequent exposure to weather, atmospheric conditions, humidity and wetness. She can tolerate occasional exposure to extreme heat and vibration and should never be exposed to extreme cold. She should be exposed to no more than moderate noise levels. The undersigned further finds that the claimant could only remember short simple instructions and would be unable to deal with detailed or complex instructions. She could do simple routine repetitive tasks but would be unable to do detailed or complex tasks. She would be limited to making simple work related decisions and should have no more than occasional contact with the general public but could have frequent interaction with co-workers and supervisors. The claimant would be able to accept constructive non-confrontational criticism, work in small group settings and be able to accept changes in the work place setting if introduced gradually and infrequently. She would be unable to perform assembly line work with production rate pace but could perform other goal-oriented work. In addition to normal workday breaks, she would be off-task 5% of an eight-hour workday (non-consecutive minutes).

5.    The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.    The claimant was born on [REDACTED] and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.696 and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since December 12, 2013, the date the application was filed (20 CFR 416.920(g)).

(Tr. 53-67) (emphasis omitted).

## VI.    ANALYSIS

Ms. Whitten raises two distinct issues on appeal. The first is whether the ALJ properly evaluated the physicians' opinions. The second is whether the ALJ properly applied the Eleventh Circuit pain standard. After careful review, the Court determines that there is no reversible error.

### A.      The ALJ Did Not Commit Reversible Error in His Treatment of the Physician Testimony

The first issue is whether the ALJ properly evaluated the medical opinions in this case. Ms. Whitten argues that the ALJ erred in giving greater weight to "the non-

examining statements from the DDS paper doctor" than the other medical sources. (*See* Doc. 9 at 9).

### 1. Dr. Morgan

Ms. Whitten argues that the "ALJ distort[ed] Dr. Morgan's findings" and omitted facts from the exam. (*See* Doc. 9 at 10-11). She also argues that the ALJ erred by failing to take into account the limitations noted by Dr. Morgan. (*See id.* at 11).[2] In response, the Commissioner argues that the ALJ was correct to give partial weight to this opinion for several reasons. (*See* Doc. 12 at 6).[3]

The Commissioner first argues that "Dr. Morgan was not a treating provider so his opinion was not entitled to controlling weight." (*See* Doc. 12 at 6) (citing

---

[2] Ms. Whitten takes issue with the ALJ's discussion of her GED. (*See* Doc. 9 at 11). It appears that the ALJ did misstate her testimony from the hearing. The ALJ's opinion states that "the claimant testified that she obtained her GED." (Tr. 64). However, at the hearing, Ms. Whitten was clear that she never obtained her GED because her online program was not accredited and that she only got to the 10th grade. (*See* Tr. 83-84). Ms. Whitten argues that the ALJ improperly discredited the physicians because of this mischaracterization of the record. (*See* Doc. 9 at 11). However, the ALJ also discredited the physicians in other ways. The Court notes that Ms. Whitten has not contested the ALJ's seventh factual finding or its effect on the findings at Step Five. Accordingly, the Court does not address that issue *sua sponte*.

[3] Those five reasons are as follows:

The ALJ gave the opinion partial weight because (1) Dr. Morgan did not have a treating relationship with Plaintiff, (2) statements in the report were inconsistent with the remaining record (3) the opinion did not match Dr. Morgan's clinical findings, (4) Dr. Morgan's diagnosis of fibromyalgia was not consistent with SSR 12-2p, and (5) Dr. Morgan's diagnosis of neuropathy appeared based only on Plaintiff's subjective complaints (Tr. 64).

(Doc. 12 at 6).

sources). Ms. Whitten agrees, but argues that the ALJ still "did not properly evaluate it." (*See* Doc. 13 at 3). The Court notes that Dr. Morgan's opinion is not controlling. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)) ("Also their opinions are not entitled to deference because as one-time examiners they were not treating physicians.").

Second, the Commissioner argues that "some of [Ms. Whitten's] statements to Dr. Morgan were inconsistent with the remaining record." (*See* Doc. 12 at 6). In particular, Dr. Morgan noted "[suicidal] thoughts" in his evaluation. (Tr. 726). The ALJ adequately discussed the medical records supporting that Ms. Whitten had suicidal thoughts but only in the past. (Tr. 64); (Tr. 771).

Third, the Commissioner argues that "Dr. Morgan's opinion was inconsistent with his own treatment notes." (*See* Doc. 12 at 7) (citing sources). This was noted by the ALJ as well. (Tr. 64) ("Further, his opinion does not remotely match his own clinical findings."). On review, the Court agrees. (*See* Tr. 722-30). After an examination showing mostly unremarkable findings, Dr. Morgan assigned severe limitations to Ms. Whitten's "ability . . . to do work-related activities." (Tr. 725-28); (*but see* Tr. 729). For example, Dr. Morgan's records show almost completely normal range of motion. (Tr. 727-28). They show normal dexterity and grip strength. (*Id.* at 728). Dr. Morgan also noted that Ms. Whitten was "a well-developed, well-nourished

claimant who is cooperative and does not appear acutely ill." (*Id.* at 723). Although there were some "pain behaviors", Ms. Whitten was "able to ambulate independently [and] transfer independently." (*See id.*).[4] Additionally, it appears that the limitations afforded by Dr. Morgan were based primarily on Ms. Whitten's own statements. (*See id.* at 722) ("[S]he states she can only sit for five to [ten] minutes before she has lower back pain."). That matters. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) ("Dr. Ruiz's opinion that Crawford is permanently and totally disabled is inconsistent with his own treatment notes, unsupported by the medical evidence, and appears to be based primarily on Crawford's subjective complaints of pain.").

Finally, the Commissioner argues that the ALJ made proper determinations on the fibromyalgia and neuropathy. (*See* Doc. 12 at 8-11). Ms. Whitten concedes that "detailed testing regarding tender points are not in the record." (*See* Doc. 13 at 4). However, Ms. Whitten argues that Dr. Go and Dr. Morgan diagnosed her with fibromyalgia and that "there is also no doctor who has specifically refuted the

---

[4] Ms. Whitten argues that the ALJ left out the part where Dr. Morgan noted that she had some "'pain behaviors' throughout the exam and decreased range of motion." (*See* Doc. 9 at 10) (citing Tr. 723). However, Dr. Morgan's chart reflects almost totally unremarkable range of motion findings. (*See* Tr. 727-28). Additionally, there is no error from the ALJ not reciting that Ms. Whitten showed some "pain behavior." (*See id.* at 723); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). He clearly considered the report and the entire record. (*See* Tr. 56-65).

fibromyalgia diagnosis." (*See id.*). That is not enough. SSR 12-2p states that the Commissioner "cannot rely upon the physician's diagnosis alone." *See* SSR 12-2p. Ms. Whitten fails to argue that she met the fibromyalgia standard in SSR 12-2p. (*See id.*). Importantly, " the claimant bears the burden of proving [disability]." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing the Code of Federal Regulations).

The parties also discuss whether the ALJ was correct to discount Dr. Morgan's opinion on neuropathy. (*See* Doc. 12 at 8); (*see* Doc. 13 at 4). The Commissioner notes that this diagnosis "[was] based on [Ms. Whitten's] subjective complaints and not supported by the record." (*See* Doc. 12 at 8). Ms. Whitten responds by citing to portions of the record that purport to show the symptoms of neuropathy. (*See* Doc. 13 at 4). The Court notes that Dr. Morgan's opinion on neuropathy seems to be based primarily on Ms. Whitten's own statements. (*See* Tr. 722-24) ("The claimant states that she has a problem with . . . peripheral neuropathy."). As a rule, an ALJ may "discount[ ] a treating physician's opinion . . . when the opinion appears to be based primarily on the claimant's subjective complaints of pain." *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) (citing another source). Additionally, the Court notes that, in Dr. Morgan's opinion, he noted largely normal findings regarding Ms. Whitten's extremities. (*See* Tr. 724). The ALJ noted this as well. (*See id.* at 58-59,

64). Further, even if the ALJ erred in not accepting the diagnosis of neuropathy, this error was harmless as the record is clear that he considered Ms. Whitten's entire condition and the whole record. (*See* Tr. 56-57). Even if the ALJ did not accept the label of neuropathy, there is no indication that he ignored the symptoms. (*See id.* at 54, 56-65).

Accordingly, the ALJ committed no reversible error in his consideration of the evidence from Dr. Morgan.

### 2.   Dr. Bentley

Ms. Whitten argues that the ALJ did not properly examine Dr. Bentley's opinion. (*See* Doc. 9 at 11-12). Ms. Whitten argues that the ALJ only accepted some of Dr. Bentley's opinion while disregarding evidence that did not support his conclusion. (*See id.* at 12). Specifically, Ms. Whitten takes issue with the ALJ's treatment of Dr. Bentley's opinions on repetitive work and PTSD. (*See id.* at 11-12).

In response, the Commissioner points out that "Dr. Bentley was not a treating provider so his opinion was not entitled to controlling weight." (Doc. 12 at 12) (citing 20 C.F.R. §416.929(c); *Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 878 (11th Cir. 2013)). The Commissioner also notes that much of Dr. Bentley's opinion "was based on [Ms. Whitten's] subjective complaints." (*See id.*) (citing sources). Specifically, the Commissioner argues that Dr. Bentley's repetitive work limitation

was not supported by the record. (*See id.* at 12-14). Ms. Whitten replies by restating her arguments that the ALJ was "substitut[ing] his opinion for that of the consulting pyschologist." (Doc. 13 at 5). She also cites to *Marbury v. Sullivan* to support her arguments that the ALJ needed to explain why he did not credit Dr. Bentley's repetitive work finding. (*See id.* at 6) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839, 840-41 (11th Cir. 1992)).[5]

Dr. Bentley is a consultative examiner. (Tr. 64). That means that his opinion does not deserve controlling weight. *See Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877 (11th Cir. 2013) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician.") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). The Court also notes the principles espoused in *Shaw v. Astrue*:

> Procedurally, an ALJ is "required to state with particularity the weight he [gives] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985) (per curiam) (citation omitted). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as

---

[5]  Ms. Whitten's citation to *Marbury v. Sullivan* is unavailing. (*See* Doc. 9 at 12); (*see* Doc. 13 at 6). The court in *Marbury* was dealing with an ALJ who erred in his treatment of a *treating* physicians' testimony. *See Marbury*, 957 F.2d at 839-41. The case was not about consultative examiners like Dr. Bentley. *See id.*

the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation omitted) (second alteration in original).

*Shaw v. Astrue*, 392 F. App'x 684, 686-87 (11th Cir. 2010).

It is important to note that the ALJ did not have to give "good cause" to reject Dr. Bentley's opinion. *See Shaw*, 392 F. App'x at 687. The ALJ also did not have to refer to every individual shred of evidence. *See id.* at 686 (citing another source). However, the ALJ did have to explain his reasons why he gave less weight to the opinion. *See id.* at 687. He did so here.

The ALJ adequately explained why he gave less weight to Dr. Bentley's non-controlling opinion. (Tr. 64). He specifically noted Dr. Bentley's finding on repetitive work. (*See id.*). He also specifically noted the PTSD diagnosis. (*See id.*). Clearly, the ALJ did not ignore this part of Dr. Bentley's opinion. (*See id.*). He then notes that there was no diagnosis for "rheumatoid arthritis or right-sided sciatica." (*See id.*). He also noted that there was no diagnosis of "fibromyalgia or lupus from an acceptable medical source." (*See id.*). Ms. Whitten does not contest either of these statements, and after searching the record the Court can find no diagnosis for any of those impairments in the relevant time period before the ALJ. The ALJ acknowledged the existence of major depressive disorder but also noted the lack of a diagnosis of

borderline intellectual functioning. (*See id.* at 65). Ms. Whitten provides no citations to any portion of the record where support for that diagnosis could be, other than with Dr. Bentley. (*See* Doc. 9 at 11-12); (*see* Doc. 13 at 5-6). Again, while the ALJ did not have to show good cause to reject Dr. Bentley's opinion, the Court notes that one way to show good cause is that the "'opinion was not bolstered by the evidence.'" *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing another source). Contrary to Ms. Whitten's arguments that the ALJ was substituting his opinion for that of Dr. Bentley, the ALJ merely took Dr. Bentley's opinion and compared it to the entire record to see if it was supported. (*See* Doc. 9 at 12); (Doc. 13 at 5). Here, the ALJ's decision that Dr. Bentley's opinions were not entirely supported by the record is supported by substantial evidence.

Additionally, the Court notes that Ms. Whitten sought treatment at the CED Mental Health Center. (*See id.* at 861-75). These records are after her meeting with Dr. Bentley and before the date of the ALJ's opinion, meaning that the ALJ had the benefit of these records while Dr. Bentley did not. (*See id.*). In these records, the Court could find no diagnosis of PTSD or borderline intellectual functioning. (*See id.*). In fact, her records reflect no impairment in intelligence. (*See id.* at 870). Additionally, the Court could not find any indication that Ms. Whitten was limited in her ability to do repetitive work. (*See id.* at 861-75).

For these reasons, the ALJ's determination regarding Dr. Bentley is supported by substantial evidence.

### 3.    Dr. Estock

Ms. Whitten argues that the ALJ erred in his consideration of Dr. Estock's opinion. (*See* Doc. 9 at 9-10). She argues that the ALJ omitted parts of Dr. Estock's limitations without explanation. (*See* Doc. 9 at 9-10); (*see* Doc. 13 at 6-7). While the Commissioner broadly argues that the ALJ did not err in considering Dr. Estock, the Commissioner does not directly tackle this issue. (*See* Doc. 12 at 14). However, on review, the Court is unpersuaded by Ms. Whitten's arguments.

Ms. Whitten states that the ALJ ignored Dr. Estock's opinions on "[her] need for a 'well-spaced work setting,' flexible day schedule, and 'casual, non-intense interaction' with the general public and coworkers." (*See* Doc. 9 at 10) (citing Tr. 56-57, 120-22). The ALJ actually included in his RFC that Ms. Whitten "should have no more than occasional contact with the general public." (Tr. 57). The ALJ also noted that Ms. Whitten needed "constructive non-confrontational criticism" and that any "changes in the work place setting" should be "introduced gradually and infrequently." (*See id.*). Additionally, Dr. Estock only stated that "the claimant would function <u>best</u> with a flexible day schedule in a well-spaced work setting." (*See* Tr. 122) (capitalization omitted) (emphasis added). Dr. Estock did not note the flexible

day schedule and well-spaced work setting as a limitation; he did not say that without those two things she could not function at all. If Dr. Estock wanted to say that Ms. Whitten needed those two things, he could have said so. He did not.[6]

Ms. Whitten also points out that "Dr. Estock did not perform a review of a complete case record, as at least 225 pages of records are added to the file after the date of his opinion." (Doc. 9 at 10). Dr. Estock rendered his opinion on March 17, 2014. (Tr. 110). Many of the medical records in this case are dated after March 17, 2014. This is important because, under SSR 96-6p, a "State agency medical and psychological consultant['s]" opinion must be "based on a review of a complete case record" to possibly receive "greater weight than the opinions of treating or examining sources." *See* SSR 96-6p. However, it is significant that while Dr. Estock might not have seen the entire record, the ALJ did. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) ("Moreover, even if the non-examining doctor was unable to review all of [claimant's] medical records before making her RFC determination, she cited several portions of the record in support of her conclusions, and the ALJ, who made the ultimate determination, had access to the entire record as

---

[6] Additionally, Ms. Whitten only speculates that these additional limitations "further erode the number of jobs available and may preclude competitive work." (*See* Doc. 9 at 10). However, when given the chance to cross-examine the Vocational Expert at the hearing, Ms. Whitten's counsel did not ask a hypothetical to that effect. (*See* Tr. 102-03).

well as Cooper's testimony."). Here, Ms. Whitten does not argue that the ALJ did not have the entire record existing at that time before him when he made his decision. Further, Dr. Estock's opinion contains numerous references to the underlying medical records. (Tr. 115-16).

Accordingly, there is no reversible error in how the ALJ treated Dr. Estock's opinion.

4. Dr. Go

Ms. Whitten also mentions the "treating source statements from Dr. Go." (Doc. 9 at 12) (citing Tr. 965). These statements are dated after the ALJ's decision. (*See* Tr. 965-67). Ms. Whitten argues that they are "new and material evidence which should be considered on remand." (*See id.* at 13). However, the Appeals Council has already considered this evidence and found that it "[did] not provide a basis for changing the . . . decision." (Tr. 3, 6). This means that a Sentence Six remand is inappropriate. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007) (citing sources). This is because "[a] remand to the Commissioner is proper under sentence six when new material evidence <u>that was not incorporated into the administrative record</u> for good cause comes to the attention of the district court." *See id.* (citing sources) (emphasis added). Here, the evidence was made a part of the administrative record and considered. (Tr. 3, 6).

Since this evidence was considered by the Appeals Council, the Court must determine whether Dr. Go's opinion means that the ALJ's decision is not supported by substantial evidence. *See Ingram v. Commissioner of Soc. Sec. Admin.*, 496 F.3d 1253, 1266-67 (11th Cir. 2007). The Commissioner urges the Court to find that Ms. Whitten has waived this argument as inadequately developed. (*See* Doc. 12 at 15). Ms. Whitten believes that this argument has not been waived because she "presented the treating source statement to the Appeals Council as new and material evidence and again raised the matter on appeal to this court." (*See* Doc. 13 at 7). The Court agrees with the Commissioner. Ms. Whitten just briefly mentions Dr. Go in her argument section. (*See* Doc. 9 at 12-13). She cites three pages from the record and not single case or statute in support. (*See id.*). This weakly developed argument has been waived.

Even if not waived, this argument is ultimately unpersuasive. It appears that Dr. Go's opinion is wholly conclusory. (*See* Tr. 965-67). "A treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'" *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)). Additionally, the Court notes that neither party has cited to the underlying medical records supporting Dr. Go's opinions. (*See* Doc. 9 at 6, 12-13); (Doc. 12 at 14-15);

(Doc. 13 at 7-8). The cited records appear to be a fill-in-the-blank form supplied by Ms. Whitten's attorney. (Tr. 965-67). Further, Dr. Go's conclusory opinions are not supported by the record as a whole.

Accordingly, Ms. Whitten's arguments regarding Dr. Go are unpersuasive.

**B.     The ALJ Did Not Commit Reversible Error in His Application of the Eleventh Circuit Pain Standard**

Finally, Ms. Whitten argues that "[t]he ALJ committed reversible error when he failed to properly apply the requisite two-step test to evaluate Ms. Whitten's complaints of pain and anxiety/depression." (Doc. 9 at 13) (emphasis omitted). The Commissioner disagrees, arguing that substantial evidence supports the ALJ's determination. (*See* Doc. 12 at 15-19). On review, the Commissioner has the better of the arguments.

The Eleventh Circuit has explained the pain standard:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

First, Ms. Whitten claims that she has "chronic pain and depression symptoms which she experiences daily." (*See* Doc. 9 at 13) (citing Tr. 85-91, 97-98). Additionally, "[s]he testifies that she has trouble ambulating or sitting for long periods and needs to alternate positions due to back pain." (*See id*.) (citing Tr. 92-93). However, the record tells a different story. Dr. Morgan's notes indicate that "[s]he is able to ambulate independently without an assistive device." (Tr. 723). There were numerous unremarkable, or only mildly remarkable, medical findings regarding Ms. Whitten's use of her extremities. (*See* Tr. 441, 743, 760, 772, 892, 904, 933).The ALJ spent time discussing Ms. Whitten's use of her extremities in the course of his opinion. (*See* Tr. 57-61, 64). The ALJ also discussed Ms. Whitten's back pain. (*See* Tr. 57-60, 63-64). Despite Ms. Whitten's arguments to the contrary, the ALJ's opinion is supported by substantial evidence.

Ms. Whitten then turns to SSR 96-8p. (*See* Doc. 9 at 14). Under that rule, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p. Additionally, "[w]ork-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond

appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* Ms. Whitten argues that the ALJ's opinion "does not adequately provide reasons for rejecting" the evidence relating to her alleged mental impairments. (*See* Doc. 9 at 14). However, the ALJ's opinion does adequately explain his rationale related to her mental impairments. (*See* Tr. 61-65). He also notes the restrictions shown by the medical record. (*See id.* at 62-63). In fact, the ALJ actually noted fairly broad limitations regarding Ms. Whitten's mental impairments and how they affect her ability to function at work. (*See* Tr. 56-57).

Ms. Whitten implies that the ALJ used the wrong standard in this case. (*See* Doc. 9 at 14-15). However, Ms. Whitten does not say where the ALJ actually used the wrong standard. (*See id.*). Additionally, Ms. Whitten argues that the ALJ cherry-picked the evidence that suited his theory of the case. (*See id.* at 15). However, in making that argument, Ms. Whitten does not bring to the attention of the Court any piece of evidence that the ALJ omitted, much less one that would constitute reversible error. (*See id.*). Accordingly, these arguments are unpersuasive.

There is no reversible error in how the ALJ approached applied the Eleventh Circuit pain standard. He adequately explained his rationale and his conclusion is supported by substantial evidence. After reviewing the parties' arguments and the record, the Court determines that Ms. Whitten's second argument does not merit

reversal.

## VII.  CONCLUSION

While the Court may have come to different conclusions if it had the free hand to re-weigh the evidence, it simply is not provided that luxury. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Bloodsworth*, 703 F.2d at 1239). When faced with an opinion supported at the very least by substantial evidence and the proper legal standards, this Court must affirm. For these reasons, the decision of the Commissioner is due to be, and hereby is, **AFFIRMED**.

**DONE** and **ORDERED** this the 19th day of June, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge